UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **NES RENTALS HOLDINGS, INC., et al.,** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
|     v. | )     CAUSE NO. 1:10-CV-406 |
| | ) |
| **STEINE COLD STORAGE, INC.,** | ) |
| | ) |
|     **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff NES Rentals Holdings, Inc., NES Equipment Rental, L.P., and NES Equipment Services Corporation, f/k/a NES Partners, LLC, f/k/a NES Partners, Inc., a/k/a NES Rentals (collectively, "NES"), bring this indemnity action against Defendant Steine Cold Storage, Inc. ("Steine"), alleging that Steine owes a duty to indemnify and hold NES harmless for the claims against it in a lawsuit arising out of the death of Steine's employee, Humberto Gustavo Menendez.[1] (Docket # 1.) The parties have filed cross-motions for summary judgment, which are now ripe for ruling.[2] (Docket # 17-20, 22, 23.)

For the following reasons, Steine's motion for summary judgment will be GRANTED, and NES's motion for partial summary judgment will be DENIED.

---

[1] Diversity jurisdiction exists under 28 U.S.C. § 1332(a). Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 14.)

[2] NES acknowledges that the full extent of its damages will not be calculable until the underlying suit is adjudicated. Therefore, it seeks partial summary judgment.
    The parties each filed a response brief but waived the filing of a reply. (Docket # 12.)

# I. FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2006, Humberto Gustavo Menendez died while operating a boom lift at a Wal-Mart construction site in Gas City, Indiana. (Steine Ans. ¶¶ 6, 16-18.) At the time of the accident, Menendez was an employee of Steine. (Steine Ans. ¶¶ 6, 16-18.) The boom lift was rented to Steine by NES for use at the construction site. (Hutchinson Aff. ¶¶ 7-9; Compl. Ex. A.) As a result of the accident, the estate and family of Mr. Menendez sued various parties, including NES, for negligence. The Complaint in that case, *Menendez v. Wal-Mart Stores East LP*, No. 1:10-cv-53 (removed to this Court on Nov. 26, 2008), alleges that NES was negligent in the maintenance of the boom lift. Of course, Steine, as Mr. Menendez's employer, was not named as a defendant in the underlying action.

When NES caused the boom lift to be delivered to the Gas City, Indiana, construction site, the truck driver presented Edward Crager, an employee and foreman of Steine, with a Rental Agreement and requested that he sign the document. (Boyer Dep. 127-28; Crager Dep. 19-23.) Steine had entered into numerous rental agreements with NES in the past, and Crager on prior occasions had signed other equipment rental agreements on Steine's behalf. (Boyer Dep. 124-25; Crager Dep. 21-23; Hutchinson Aff. ¶ 9.) As in the past, Crager signed the Rental Agreement for Steine. (Compl. Ex. A.)

The one-page Rental Agreement is two-sided. (Compl. Ex. A.) On the front page, just above the signature line where Crager signed, this text appears in fine print:

> Signer acknowledges that he has read and fully understands this rental agreement including the terms and conditions on the reverse side. Signer agrees that Customer is solely responsible for compliance with Federal and State training and licensing requirements, except where Company provides operator. Signer acknowledges that he is authorized to [s]ign this agreement and bind the [C]ustomer to the terms and conditions on the reverse side.

(Compl. Ex. A.) Also on the front page of the Agreement, just below Crager's signature,

the following text appears in italicized, upper-case, larger bold type:

> ***PLEASE NOTE THAT THERE ARE IMPORTANT TERMS ON THE REVERSE SIDE OF THIS CONTRACT, INCLUDING AN INDEMNIFICATION PROVISION.***

(Compl. Ex. A.)

On the reverse side of the Agreement, Paragraph 19, in bold, italicized text that is substantially larger than all of the other text on the page, appears this language:

> ***19. <u>Indemnity.</u> Customer agrees to indemnify and hold Company harmless against any and all claims, demands, or suits (including costs of defense, attorney's fees, expert witness fees, and all other costs of litigation) for any and all bodily injury, property damage, or any other damages or loss, regardless of whether such injury, damage or loss is caused in whole or in part by negligence, which arise out of, result from, or relate to the use, operation, condition or presence of the equipment except where such injury, damage or loss is caused solely by the Company.***

(Compl. Ex. A ¶ 19.) In addition, Paragraph 3(c) of the Rental Agreement requires that Steine carry $1,000,000 in commercial general liability insurance and $2,000,000 in aggregate coverage with NES named as an additional insured and "covering all losses and damages." (Compl. Ex. A ¶ 3.)

Following NES's delivery of the boom lift at the construction site, NES remained available to Steine for maintenance and additional equipment needs. (Boyer Dep. 130; Crager Dep. 26-27.) More particularly, on September 27, 2006, NES performed a maintenance inspection of the boom lift. (Hutchinson Aff. Ex. 3.) Based on several inspections completed both prior to and after the accident, a branch manager for NES opined that the lift was functioning properly on November 20, 2006. (Hutchinson Aff. ¶¶ 9-14.)

In addition, Steine inspected the lifts it utilized on the Wal-Mart project, completing paperwork weekly to document these inspections. (Boyer Dep. 60-61, 166-67.) The lift that Mr. Menendez operated on November 20, 2006, generated no issues or concerns for Steine prior to

3

the accident. (Boyer Dep. 62-63.)

## II. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 (7th Cir. 2008) (quoting *Payne*, 337 F.3d at 770). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

"When cross-motions for summary judgment are filed, 'courts look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact.'" *M.O. v. Ind. Dept. of Educ.*, No. 2:07-CV-175-TS, 2009 WL 857548, at *3 (N.D. Ind. Mar. 31, 2009) (alteration in original) (citing *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). "The contention of one party that there are no issues of material fact sufficient to prevent the entry of

judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Id*. (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment—more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008) (citations omitted); *M.O.*, 2009 WL 857548, at *3.

### III. DISCUSSION

The Rental Agreement provides that "the laws in which [Steine] first takes possession of the equipment" govern the Agreement. (Compl. Ex. A ¶ 14.) Steine took possession of the lift in Gas City, Indiana. Accordingly, the parties agree that Indiana law applies to this dispute. (Pls.' Mem. in Supp. 11; Def.'s Resp. Br. 3-9.)

#### A. Indiana Law Applicable to Indemnity Agreements

"Absent prohibitive legislation, no public policy prevents parties from contracting as they desire." *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003). "[I]n Indiana, a party may contract to indemnify another for the other's negligence."[3] *Id*. "In an indemnity agreement one party (the indemnitor) promises to reimburse another party (the indemnitee) for the indemnitee's loss, damage, or liability, thereby shifting the financial

---

[3] This right of contract, however, is limited by Indiana Code § 26-2-5-1, which provides:

All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract . . ., which purport to indemnify the promisee against liability for . . . death or bodily injury to persons . . . from the sole negligence or willful misconduct of the promisee . . . are against public policy and are void and unenforceable.

5

obligation to pay damages from the indemnitee to the indemnitor." *Molnar v. Mittal Steel USA, Inc.*, No. 2:07-cv-241, 2010 WL 746757, at *6 (N.D. Ind. Mar. 1, 2010).

"Actions on indemnity agreements are governed by contract law." *Zebrowski & Assocs., Inc. v. City of Indianapolis*, 457 N.E.2d 259, 261 (Ind. Ct. App. 1983). Accordingly, "[i]f the words of the indemnity clause are clear and unambiguous, they are to be given their plain and ordinary meaning, and indemnity agreements are construed 'to cover all losses and damages to which it reasonably appears the parties intended it to apply.'" *Molnar*, 2010 WL 746757, at *6 (quoting *Mead Johnson & Co. v. Kenco Group, Inc.*, 899 N.E.2d 1, 3 (Ind. Ct. App. 2009)).

"Because a contract that obligates one party to pay for the negligence of the other party is a 'harsh burden,' the terms must be clear and unequivocal, defining not only 'the area of application, that is negligence, but also defining the cause of damages in terms of physical or legal responsibility, that is, to whom the clause applies.'" *Id.* (quoting *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142, 145 (Ind. Ct. App. 1991)); *see GKN*, 798 N.E.2d at 552 (explaining that indemnity provisions "are strictly construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal terms"). The Indiana Court of Appeals has emphasized that it "disfavor[s] indemnification clauses because . . . to obligate one party for the negligence of another is a harsh burden that a party would not lightly accept." *GKN*, 798 N.E.2d at 552.

Accordingly, the Indiana courts follow "a two-step analysis to determine whether a party has knowingly and willingly accepted this [harsh] burden." *GKN*, 798 N.E.2d at 552 (citing *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 480 (Ind. Ct. App. 2000); *Moore Heating*, 583 N.E.2d at 146). "First, the indemnification clause must expressly state in clear and

6

unequivocal terms that negligence is an area of application where the indemnitor (in this case, [Steine]) has agreed to indemnify the indemnitee (in this case, [NES])." *GKN*, 798 N.E.2d at 552. "The second step determines to whom the indemnification clause applies." *Id*. To reiterate, "in clear and unequivocal terms, the clause must state that it applies to indemnification of the indemnitee by the indemnitor for the indemnitee's own negligence." *Id*.; *see Estate of William v. S. Ind. Gas & Elec. Co.*, 551 F. Supp. 2d 751, 755-56 (S.D. Ind. 2008).

### B. Steine Did Not Agree in Clear and Unequivocal Terms to Indemnify NES for a Claim Caused, in Part or in Whole, by NES's Own Negligence

As a threshold matter, the parties agree that the plain language of the indemnification clause excludes any and all losses "caused *solely* by [NES]." (Compl. Ex. A ¶ 19 (emphasis added); Pls.' Mem. in Supp. 24-25; Def.'s Resp. Br. 10.) Consequently, this dispute centers on whether the indemnification clause is enforceable against Steine for claims caused in part by NES's own negligence.

Applying the foregoing two-step analysis, the parties agree that the subject indemnification clause expresses "in clear and unequivocal terms that negligence is an area of application" where Steine has agreed to indemnify NES. *GKN*, 798 N.E.2d at 552; (Pls.' Mem. in Supp. 22; Def.'s Resp. Br. 5). That is, the clause states that Steine "agrees to indemnify and hold [NES] harmless against any and all claims . . . for any and all bodily injury, property damage, or any other damages or loss, *regardless of whether such injury, damage, or loss is caused in whole or in part by negligence* . . . ." (Compl. Ex. A ¶ 19 (emphasis added).) Therefore, the indemnity clause withstands scrutiny under the first step of the two-step analysis.

Consequently, the enforceability of the indemnity clause with respect to claims caused in part by NES's own negligence hinges on the second step of the two-step analysis—that is, "to

7

whom the indemnification clause applies." *GKN*, 798 N.E.2d at 552. In order for the clause to be enforceable against Steine in this respect, the text of the provision must articulate in "clear and unequivocal terms" that Steine agreed to indemnify NES for its own negligence. *Moore Heating*, 583 N.E.2d at 145.

Here, however, the indemnity clause fails to satisfy the "clear and unequivocal" standard with respect to claims caused by NES's own negligence. To review, the relevant text of the indemnity clause provides:

> [Steine] agrees to indemnify and hold [NES] harmless against any and all claims . . . for any and all bodily injury, property damage, or any other damages or loss, regardless of whether such injury, damage, or loss is caused in whole or in part by negligence, which arise out of . . . the use, operation, condition or[] presence of the equipment except where such injury, damage or loss is caused solely by [NES].

(Compl. Ex. A ¶ 19.) Although the clause broadly articulates that it applies to "any and all claims," including those caused by negligence, it does *not* expressly state, in clear and unequivocal terms, that Steine agreed to indemnify NES for claims arising out of NES's *own* negligent acts. *See Molnar*, 2010 WL 746757, at *7. To reiterate, "[b]ecause a contract that obligates one party to pay for the negligence of the other party is a 'harsh burden,' the terms must be clear and unequivocal . . . ." *Id.* (quoting *Moore Heating*, 583 N.E.2d at 145). That is, the provision for the indemnification of NES's *own* negligence must be "explicit," not "implicit." *Moore Heating*, 583 N.E.2d at 146.

> For example, if a clause simply states that a subcontractor shall indemnify a general contractor for any negligence which arises from the job, it is sufficient to show that the clause applies to negligence but is insufficient to inform the subcontractor that it must indemnify the general contractor for acts of the general contractor's own negligence. The claim of negligence which arises from the job could have been caused by the negligence of the general contractor, the subcontractor, third persons, or a combination of them. This is the very reason

8

the indemnity for the indemnitee's own negligence must be specifically, not generally, prescribed. Therefore, in order to reflect a knowing and willing acceptance of such a harsh burden, the indemnification clause must expressly state, in clear and unequivocal terms, that the indemnitee agrees to indemnify the indemnitor against the indemnitor's own negligence.

*Molnar*, 2010 WL 746757, at *6 (quoting *Moore Heating*, 583 N.E.2d at 145).

Nevertheless, in an effort to avoid summary judgment against it, NES cites to four Indiana cases to support its contention that Steine agreed to indemnify it for claims caused by its own negligence. Although the Court will discuss each of these cases in turn, ultimately none of the cases actually support NES's assertion.

NES first cites *GKN,* 798 N.E.2d at 550, 552-55, in which a general contractor on a highway construction project filed a third party complaint for indemnity against the subcontractor for the injuries of one of its employees. There, the relevant indemnity provision read as follows:

> [Starnes] shall indemnify and hold harmless [GKN] . . . from and against all claims . . . arising out of or resulting from the performance of the work, provided that such claim . . . is caused in whole or in part by any negligent act or omission of [Starnes] . . ., *regardless of whether it is caused in part by a party indemnified hereunder*.

*Id*. at 550 (emphasis added). The Indiana Court of Appeals concluded that this clause clearly and unequivocally contemplated indemnity for the general contractor's own negligence:

> [I]t is clear that the indemnification clause states that Starnes's liability for indemnification to GKN will not be negated merely because GKN is partly at fault. It is equally clear, and both parties agree, that Starnes was not to indemnify GKN for any injury which was the result of GKN's negligence alone. However, through the indemnification clause, Starnes has agreed to indemnify GKN for GKN's own negligence where the injury is caused partly by the negligence of Starnes or any of its employees.

*Id*. at 553-54.

9

Thus, like here, the parties in *GKN* agreed that the subcontractor was not to indemnify GKN for a loss that was caused solely by GKN. After that, however, the two clauses part ways: the *GKN* clause expressly reflects that the subcontractor must indemnify GKN for a negligence claim "regardless of whether it is caused in part by [GKN]," but the subject clause here does not expressly address claims caused in part by NES's own negligence. Of course, as explained earlier, a provision for indemnity of the indemnitee's *own* negligence must be "explicit," not "implicit." *Moore Heating*, 583 N.E.2d at 146. Therefore, *GKN* fails to support NES's position.

NES also cites *Moore Heating*, 583 N.E.2d at 146, which the Indiana Court of Appeals relied upon when deciding *GKN*. There, the indemnity clause provided as follows:

> [Moore] agrees to indemnify [Huber] against and hold [Huber] harmless from any and all liability . . . from any claim or cause of action of any nature arising while on or near the Job Site . . . *whether or not it is alleged that [Huber] in any way contributed to the alleged wrongdoing or is liable due to a nondelegable duty*. It is the intent of the parties that [Moore] shall indemnify [Huber] . . . to the fullest extent permitted by law, however, [Moore] may not be obligated to indemnify [Huber] for the sole negligence or willful misconduct where such indemnification is contrary to law, but otherwise it is the intent of the parties that [Moore] shall indemnify [Huber] to the fullest extent permitted by law for such liability. . . .

*Id*. at 144 (emphasis added). The Court concluded that the clause did, in fact, state in clear and unequivocal terms that Moore was to indemnify Huber for its own negligence. Again, the Court cannot accept NES's assertion that the indemnity clause in *Moore Heating* is analogous to the instant clause. The *Moore Heating* clause specifically articulated that indemnity would apply whether or not Huber "in any way contributed to the alleged wrongdoing," *id*.; here, however, the instant clause is devoid of any language contemplating indemnification for losses caused in part by NES's own negligence.

Next, NES relies upon *Fort Wayne Cablevision v. Indiana & Michigan Electric Co.*, 443

N.E.2d 863, 864 (Ind. Ct. App. 1983), in which the indemnification clause stated:

> Licensee hereby agrees to indemnify, hold harmless, and defend Owner from and against any and all actions . . . arising out of or in any manner connected with the facilities of Licensee to be installed hereunder, or which Owner may sustain or incur in connection with any litigation . . . thereto . . . *whether or not due in whole or in part to any act, omission, or negligence of Owner* . . . .

(emphasis added). Again, unlike the subject clause, the provision in *Fort Wayne Cablevision* expressly contemplates indemnification for claims caused partly by the Owner's own negligent acts.

Finally, NES relies upon the indemnity provision in *Zebrowski & Associates, Inc. v. City of Indianapolis*, 457 N.E.2d 259, 262 (Ind. Ct. App. 1983), which provided:

> Contractor shall defend, indemnify and hold harmless the Utility . . . from and against all claims . . . arising out of or resulting from the operations of the Contractor, except for those arising solely from Utility's negligence, provided that any such claim . . . is caused (or claimed to have been caused) in whole or in part by any act or omission of the Contractor . . ., *regardless of whether or not it is caused (or is claimed to have been caused) in part by a party indemnified hereunder* . . . .

(emphasis added). Once again, the *Zebrowski* indemnification clause is dissimilar to the subject clause because it expressly contemplates indemnification for claims caused "in part" by the indemnitee; as emphasized earlier, the subject clause is silent on this point. As a result, *none* of the cases cited by NES in support of summary judgment actually support its assertion that the subject clause is enforceable for claims caused in part by its own negligence.

Instead, as Steine contends, the subject clause here is more akin to the indemnity clauses collected and discussed in *Bituminous Fire & Marine Insurance Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360, 1368-70 (Ind. Ct. App. 1982) (collecting cases), in which the Indiana Court of Appeals found that the clauses, although broadly inclusive of all claims, lacked the

11

"specific language which could be characterized as a clear and unequivocal indemnity to [the indemnitee] for its own negligence . . . ." The *Bituminous* Court cited, for example, the clause in *State v. Thompson*, 385 N.E.2d 198, 217 (Ind. Ct. App. 1979), which stated: "The permittee shall assume all responsibility for any injury or damage to persons or property resulting directly or indirectly from the construction of any approach or driveway." It also described the indemnity clause in *Vernon Fire & Casualty Insurance Company v. Graham,* 336 N.E.2d 829, 831 (1975), which provided: "The Lessee agrees to be responsible for any damage to the property of the Lessor which may result from any use of the demised premises, or any act done thereon by the Lessee . . . and will also save the Lessor harmless from any liability to any other person, for damage to person or property resulting from such causes." *See also Gen. Tel. Co. of Ind. v. Penn Cent. Co.*, 270 N.E.2d 337 (1971) ("Second Party (Telephone) shall and will at all times hereafter indemnify and save harmless First Party (Railroad) from and against any and all . . . claims . . . which First Party may suffer . . . caused either wholly or in part by reason of the location, construction, maintenance, use or presence of said work . . . ."); *Gen. Accident & Fire Assurance Corp. v. New Era Corp.*, 213 N.E.2d 329, 330 (Ind. Ct. App. 1966) ("It is understood that Vendor . . . agrees to protect and indemnify The Austin Company against all claims . . . which may arise in connection with the fulfillment of this Purchase Order.").

Like the clauses collected in *Bituminous Fire*, 437 N.E.2d at 1368-70, the text of the indemnification clause at issue here is inclusive of *all* claims, including negligence, arising out the use of the boom lift operated by Mr. Menendez on November 20, 2006. Under Indiana law, however, broad language that encompasses all claims is insufficient to provide indemnity for losses caused by the indemnitee's own negligence. As explained, a contract that requires a party

12

to pay for the negligence of the other party is a "harsh burden" that an indemnitor would not lightly accept, *Molnar*, 2010 WL 746757, at *7; accordingly, indemnity clauses are "strictly construed" and will not be held to provide indemnification for an indemnitee's own negligence "unless it is so stated in clear and unequivocal terms." *GKN*, 798 N.E.2d at 552. Here, the subject indemnification clause does not state in clear and unequivocal terms that Steine agreed to indemnify NES for its *own* negligence, and therefore it is unenforceable with respect to claims caused by NES's own negligent acts.

For these reasons, summary judgment will be GRANTED in Steine's favor.

## IV. CONCLUSION

Defendant Steine's Motion for Summary Judgment (Docket # 17) is GRANTED, and Plaintiff NES's Motion for Partial Summary Judgment (Docket # 19) is DENIED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiffs.

SO ORDERED.

Enter for the 23rd day of January, 2012.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge